U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

DEC 0 2 2005

ROBERT H. SHEMWELL, CLERK
BY _____
DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

EDWARD E. HARRIS,
      Petitioner

VERSUS

WARDEN, LOUISIANA STATE
PENITENTIARY,
      Respondent

CIVIL ACTION
NO. CV04-1052-M

JUDGE ROBERT G. JAMES
MAGISTRATE JUDGE JAMES D. KIRK

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, in forma pauperis, by pro se petitioner Edward E. Harris ("Harris") on May 10, 2004. Harris is contesting his February 1999 convictions, by a jury in the Louisiana Fourth Judicial District Court in Ouachita Parish, on two counts of aggravated rape. Harris was sentenced to two consecutive sentences of life imprisonment and is presently confined in the Louisiana State Penitentiary in Angola, Louisiana.

Harris raises the following grounds for relief in his habeas petition:

1. Amy Richardson-Nezat committed perjury because she told her examining physician that her attacker did not have a weapon, her "rape" was staged, Harris'

fingerprints were not on the things she reported that he touched, and Harris' DNA was not on her.

2. Lisa Curry committed perjury when she gave conflicting reports fo the police concerning the amount of money Harris allegedly took from her, Harris' fingerprints were not on the things she reported that he touched, and Harris' DNA was not on her.

3. The trial judge erred in allowing hearsay testimony from officers Heath Mills, Kurt Fuqua, Lt. Jay Via, and Dr. Lisa Walton.

4. Expert reports should have been disclosed to defense before trial, and Lt. Via should not have been allowed to return to the stand as an expert witness over Harris' objection.

5. Harris had ineffective assistance of trial counsel because his attorney did not ask for a list of potential witnesses from Harris until the day before trial began; failed to impeach the state's witnesses with their conflicting statements; and failed to interview defense witnesses and only interviewed Harris three times.

6. La.C.Cr.P. art. 413(B) is unconstitutional.

7. There was racial discrimination in the selection of the grand jury forepersons in Ouachita Parish at the time Harris was indicted in 1997.

8. Harris had ineffective assistance of trial counsel when his attorney: (1) failed to object to the unconstitutionality of Article 413(B) and race discrimination in the selection of the grand jury foreperson, (2) failed to file a motion for change of venue on the grounds of pretrial publicity, (3) failed to impeach and charge key state witnesses with perjury in their testimonies under oath, (4) failed to subpoena and interview any of defendant's witnesses before trial, (5) failed to object to state employees' testimonies concerning statement Harris allegedly made, without counsel present, to law enforcement officers and the state-employed treating physician, (6) failed to make a pretrial motion for a list of state witnesses, instead moving for the list after the jury was selected (7) failed to move to suppress evidence and object to introduction of a letter and a black leather jacket; (8)

2

failed to inform Harris of the evidence the State intended to use against him at trial, and (9) failed to object other crimes evidence.

9. The State knowingly used false and perjured testimony from Ms. Curry, Ms. Richardson-Nezat, Lt. Via, Mr. Nezat, Detective Gray, and Mr. Denny, resulting in a denial of due process.

10. Harris had ineffective assistance of counsel when his attorney failed to object to hearsay testimony from Officer Heath Mills, and when the court allowed the prosecutor to question Officer Kurt Fuqua as to hearsay.

11. The trial judge erred in allowing the State to introduce evidence of other crimes (theft) against Harris.

12. The State failed to turn over evidence favorable to Harris - complete police reports, grand jury testimony, and fingerprint evidence found on items.

13. The trial judge erred in denying Harris' motion to sever his trials on the two charges.

14. The trial judge erred in allowing the State to introduce testimony protected by the physician-patient privilege.

15. The trial judge erred in granting Harris' challenge for cause of prospective juror Steven Nugent.

16. The trial judge erred in failing to hold a recess to allow Harris to locate a subpoenaed witness, Samantha Works.

17. There is insufficient evidence to support his conviction for aggravated rape of Amy Richardson-Nezat.

18. There is insufficient evidence to support his conviction for aggravated rape of Lisa Curry.

In a previous Report and Recommendation, the undersigned recommended dismissal of Harris' petition for untimeliness in accordance with Felder v. Johnson, 204 F.3d 168 (5th Cir.), cert.

3

den., 531 U.S. 1035, 121 S.Ct. 622 (2000), citing <u>Fisher v. Johnson</u>, 174 F.3d 710, 713 (5th Cir. 1999). See also, <u>Henderson v. Johnson</u>, 1 F.Supp.2d 650 (N.D.Tex. 1998). On objection by Harris, asking for equitable tolling due to delays from to his confinement in administrative segregation, his need for assistance from inmate counsel and Legal Programs, and the prison classification officer's delay in providing him with postage, the district judge equitably tolled the limitation period and remanded the case to the undersigned for consideration on the merits.

<u>Facts</u>

The following facts in this case were set forth by the Louisiana Second Circuit Court of Appeal at <u>State v. Harris</u>, 33,406 (La.App. 2 Cir. 8/25/00), 765 So.2d 1230, 1232, writ den., 2000-2868 (La. 8/24/01), 795 So.2d 322, as follows:

> "On May 28, 1997, the defendant, Edward Earl Harris ('Harris'), was charged by grand jury indictment of two counts of aggravated rape in violation of La. R.S. 14:42. The facts leading up to Harris's arrest are as follows.
>
> "In February 1997 in Monroe, Harris's first victim ('AR') was awakened at 5:00 a.m. by the defendant lying next to her in her bed, his face covered with what appeared to be a black sheet. When AR asked the defendant about his identity, he called her by her first name and told her to shut up. He then placed a blindfold over her eyes, told her that he had a gun, which he pressed against her throat, and threatened to use the gun if she did not comply with his demands. Harris then performed oral sex on AR and raped her. Penetration occurred and the defendant ejaculated. About thirty minutes after Harris left AR's apartment, she went to the home where her boyfriend was staying. She told her boyfriend what

4

happened, and they called 911.

"Upon investigation of the crime scene, Ouachita Parish Sheriff's Deputy Connie Miller ('Deputy Miller') found a blue bandana behind AR's apartment door; the bandana did not belong to AR or her boyfriend. Also, a black jacket owned by AR was discovered to be missing shortly after the crime. A medical examination of AR performed on the morning of the rape confirmed sexual intercourse had taken place.

"The facts giving rise to the second charge of aggravated rape occurred on April 4, 1997. At about 9:00 that evening, Harris's second victim ('LC') came home from work to her apartment in West Monroe. LC left her keys, cell phone and purse on her kitchen table and left her door unlocked and open while she walked her dog. Once back in her apartment, LC phoned her neighbor to ask him about a suspicious black man she saw her neighbor talking to. Her neighbor told her that the man said that he was looking for someone in the apartment complex, mentioned a name that the neighbor did not recognize, and walked away.

"While LC was in bed watching television at 9:49 p.m., she heard someone 'jiggling' at the back door. She again telephoned her neighbor and asked him if he could see who was at the door. The neighbor told her that he could not see anyone. LC then saw Harris standing in her hallway, and told her neighbor that someone was in her apartment. Her neighbor called 911 and reported the incident to the police.

"Harris had a gun and told LC not to look at him. He put the gun to her, blindfolded her with her black robe, and called LC by her first name. Harris raped LC. Penetration occurred and as the defendant ejaculated, someone began knocking on LC's apartment door.

"Police officers soon entered LC's apartment, pushed Harris against the wall and questioned LC. A search of LC's apartment revealed the gun Harris used on the floor in LC's closet.

"After a trial by jury, Harris was convicted on both counts of aggravated rape."

## Rule 8(a) Resolution

This court is able to resolve the merits of this habeas corpus petition without the necessity of an evidentiary hearing because there is no genuine issue of material fact that is relevant to the petitioner's claims, and the State court records provide the required and adequate factual basis necessary to the resolution of the habeas corpus petition. Moya v. Estelle, 696 F.2d 329, 332-33 (5th Cir. 1983); Easter v. Estelle, 609 F.2d 756, 761 (5th Cir. 1980); Habeas Corpus Rule 8(a).

## Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall be considered only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254 and AEDPA, which is applicable to habeas petitions filed after its effective date on April 24, 1996, habeas relief is not available to a state prisoner with respect to a claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law as determined by

the Supreme Court of the United States; or (2) resulted in a decision that was based on an *unreasonable determination* of the facts in light of the evidence presented in the State Court proceeding. Therefore, pure questions of law and mixed questions of law and fact are reviewed under Section 2254 (d)(1), and questions of fact are reviewed under Section 2254(d)(2). <u>Martin v. Cain</u>, 246 F.3d 471, 475-76 (5th Cir. 2001), cert. den., 534 U.S. 885, 122 S.Ct. 194 (2001), and cases cited therein.

A state court decision is "contrary to" clearly established Supreme Court precedent if the state court applies a rule that contradicts the governing law set forth in Supreme Court cases, or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. A state court decision falls within the "unreasonable application" clause when it unreasonably applies Supreme Court precedent to the facts. <u>Martin</u>, 246 F.3d at 476, and cases cited therein.

A federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was objectively reasonable. A federal court cannot grant habeas relief simply by concluding that the state court decision applied clearly established federal law erroneously; the court must conclude that such application was also unreasonable. <u>Martin</u>, 246 F.3d at 476, and cases cited therein.

## Law and Analysis

### I.   Defaulted Claims

Procedural Bar

The Respondent contends several of Harris' claims - Numbers 1, 2, 3, 4, 6, 7, 9, 11, and 12 - are procedurally barred.

1.

Federal habeas review is barred in all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claims will result in a fundamental miscarriage of justice. To prevent federal habeas review, a state procedural bar must be independent of the merits of the federal claim and adequate in the sense of not being unconstitutional, arbitrary, or pretextual. Lott v. Hargett, 80 F.3d 161, 164 (5th Cir. 1996). Also, Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). A state procedural rule enjoys a presumption of adequacy when the state court expressly relies on it in deciding not to review a claim for collateral relief. Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997), cert. den., 523 U.S. 1125, 118 S.Ct. 1811 (1998). Louisiana courts have regularly invoked the limitation in La.C.Cr.P. art. 930.4(C) to bar claims

raised for the first time in an application for post-conviction relief instead of on direct appeal. Bell v. Cain, 2002 WL 31002831, *3-*4 (E.D.La. 2002).

Cause is demonstrated by showing objective external factors which prevented the petitioner from having raised the instant claim previously, and actual prejudice resulting from the error. U.S. v. Flores, 981 F.2d 231, 235-36 (5th Cir. 1993). "Cause" under the cause and prejudice standard must be something external to the petitioner, something that cannot be fairly attributed to him. McCowin v. Scott, 67 F.3d 100, 102 (5th Cir. 1995). Absent exceptional circumstances, establishment of ineffective assistance of counsel satisfies cause and prejudice. U.S. v. Acklen, 47 F.3d 739, 742 (5th Cir. 1995).

If the petitioner cannot show cause, the failure to properly raise the claim in an earlier proceeding may nonetheless be excused if the petitioner can show that a fundamental miscarriage of justice would result from a failure to entertain the claim, i.e. the petitioner must make a colorable showing of actual innocence. U.S. v. Flores, 981 F.2d at 235-36. Also, McCleskey v. Zant, 499 U.S. 467, 495, 111 S.Ct. 1454, 1471, 113 L.Ed.2d 517 (1991). A fundamental miscarriage of justice occurs only in a very narrow class of cases where a constitutional violation probably resulted in the conviction of an innocent person. McCleskey, 499 U.S. at 494, 111 S.Ct. at 1470. Also, Sawyer v. Whitley, 505 U.S. 333,

9

339-40, 112 S.Ct. 2514, 1529, 120 L.Ed.2d 269 (1992) (the miscarriage of justice exception is concerned with actual rather than legal innocence).

A federal court faced with allegations of actual innocence, whether of the sentence or of the crime charged, must first address all non-defaulted claims for comparable relief and other grounds for cause to excuse the procedural default. Dretke v. Haley, 541 U.S. 386, 393-394, 124 S.Ct. 1847, 1852 (2004). The fundamental miscarriage of justice exception to the rule that state procedural default bars federal habeas review is limited to cases where the petitioner can make a persuasive showing that he is actually innocent of the charges against him. Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted. Finley v. Johnson, 243 F.3d 215, 220 (5th Cir. 2001). To establish the requisite probability that he was actually innocent, the petitioner must support his allegations with new, reliable evidence that was not presented at trial and show that it was more likely than not that no reasonable juror would have convicted him in the light of the new evidence. Finley, 243 F.3d at 221, quoting Schlup v. Delo, 513 U.S. 298, 115 S.Ct. 851 (1995). A showing of facts which are highly probative of an affirmative defense, which if accepted by a jury would result in the defendant's acquittal, also constitutes a sufficient showing of actual innocence. Finley, 243 F.3d at 221.

## 2. Grounds 6 & 7

The state district judge dismissed Harris' application for post-conviction relief claims as to Article 413(B) and racial discrimination in the selection of the grand jury foreperson for failure to file a pretrial motion to quash the indictment (Resp. Ex. E), which are Grounds Numbers 6 and 7 in his habeas petition. The Second Circuit Court of Appeal held Harris failed to preserve his grand jury foreperson discrimination and Article 413(B) claims with a pretrial motion to quash (Resp. Ex. G). The Second Circuit also stated the record did not show that Harris provided reasons for failing to raise the other issues on direct appeal, or that the district court had ruled whether the omissions were excusable (Resp. Ex. G). The Louisiana Supreme Court denied writs without opinion.

Normally, based on the state courts' reasons, Harris's grand jury foreperson and Article 413(B) claims (Grounds Numbers 6 and 7) would be procedurally barred unless Harris can show cause for the default and actual prejudice as a result of the alleged violation of federal law, or that the constitutional violation probably resulted in the conviction of an innocent person. However, in this case, the state courts were in error. *Harris' attorney did in fact file a pretrial motion to quash the indictment based on an unconstitutional grand jury foreperson selection procedure* (Ex. Vol. 2 of 3, Tr. pp. 498-499). That motion is *in* the state court

record, and is *listed* in the chronological index for the state court record.

The Supreme Court pointed out in <u>Campbell v. Louisiana</u> that claims of race discrimination in the selection of the grand jury foreperson have been available, regardless of the petitioner's race, since <u>Rose v. Mitchell</u>, 443 U.S. 545, 99 S.Ct. 2993 (1979). Harris' Art. 413B claim was also available at the time he was indicted, as well as at the time of trial. It was held by the Fifth Circuit in <u>Guice v. Fortenberry</u>, 633 F.2d 699, 703 (5th Cir. 1980), on rehearing, 661 F.2d 496 (5th Cir. 1981)(Guice I and Guice II), that Louisiana's previously used grand jury foreperson selection process, La.C.Cr.P. art. 413, whereby eleven grand jurors were selected by lot but the foreperson (who was the twelfth grand juror) was selected by the judge from the venire, was susceptible of abuse and was not racially neutral. Also, <u>Campbell</u>, 523 U.S. 392, 395, 118 S.Ct. 1419, 1422 (1998); <u>Guillory v. Cain</u>, 303 F.3d 647 (5th Cir. 2002), cert. den., 538 U.S. 949, 123 S.Ct. 1627 (2003). Since the grand jury foreperson's role is not merely ministerial because the foreperson is a voting member of the grand jury, the composition of the grand jury itself was affected. See La.C.Cr.P. art. 413. Therefore, a claim of discrimination in the selection of the grand jury foreperson must be treated as a claim in the selection of the grand jury itself. <u>Campbell v. Louisiana</u>, 523 U.S. at 396-97 & 340-43, 118 S.Ct. at 1422, 1424-25 (1998);

12

Guice, 633 F.2d at 704. The previous selection procedure, set forth in La.C.Cr.P. art. 413, was changed in La. Acts 1999, No. 984, § 1. In response to the United States Supreme Court's decision in Campbell v. Louisiana, the Louisiana legislature amended La. Code Crim. Proc. art. 413(B) by La. Acts 1999, No. 984, § 1, to remove the selection power from the district court judge, in favor of a random selection of the grand jury foreperson. State v. Langley, 1995-1489 (La. 4/3/02), 813 So.2d 356. Since Harris was indicted in 1997 (Vol. 1 of 3, p. 44) pursuant to the old grand jury foreperson selection process, his Article 413(B) claim will be considered together with his claim of racial discrimination in the selection of his grand jury foreperson.

To establish ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984), Harris must show that counsel's performance was deficient and that he was prejudiced by the defense. Although, generally, prejudice does not have to be shown where there is racial discrimination in the selection of the grand jury foreperson, Rose v. Mitchell, 443 U.S. 545, 556, 99 S.Ct. 2993 (1979), actual prejudice is required where the defendant has failed to preserve his claim that his grand jury was selected through a racially discriminatory process. Pickney v. Cain, 337 F.3d 542, 545 (5th Cir. 2003). In this case, Harris's claim was not preserved because a hearing was never held and the motion was never ruled on.

13

The hearing on Harris' motion to quash was continued from January 22, 1999, and ultimately was never held (Ex. Vol. 3 of 3, Tr. p. 502). Arguably, the failure to follow through with the motion constituted a procedural default of the claim due to ineffective assistance of counsel. However, even assuming Harris' motion to quash the indictment would have been successful, Harris has failed to show prejudice from his counsel's failure to do so. Given the nature of the State's evidence in this case, including the fact that Harris was caught by the police inside the second victim's apartment immediately after the rape, if counsel had filed a motion to quash the indictment, the State would have likely presented the case to a second grand jury and obtained a second indictment. Under these circumstances, Harris' attorney's failure to follow through with the motion is arguably the result of a sound strategic decision not to engage in futile motions. Compare, Pickney, 337 F.3d at 545; Brown v. Cain, 337 F.3d 546 (5th Cir. 2003). Therefore, Harris has not shown that his attorney's failure to follow through on the motion to quash constituted ineffective assistance of counsel which satisfies cause and prejudice. Harris has not overcome the procedural bar to this court's consideration of Grounds Numbers 6 and 7.

### 3. Grounds 1, 2, 3, 4, 9, 11, 12

The Respondent contends Grounds Numbers 1, 2, 3, 4, and 9 are also procedurally barred. The state district judge found Harris'

claims as to the knowing use of false testimony (from Curry, Richardson-Nezat, Lt. Via, Nezat, Detective Gray, and Denny), the Court erred in allowing a witness to testify (Officer Heath Mills), accusations that the District Attorney withheld expert witness reports prior to trial, the District Attorney failed to turn over Brady[1] material (police reports, grand jury testimony, and fingerprint evidence), and use of other crimes evidence were being raised for the first time on post-conviction relief, and directed Harris to state the reasons for his failure to raise them on direct appeal,[2] pursuant to La.C.Cr.P. art. 930.4[3] (Resp. Ex. E).

Since Harris did not explain why he failed to raise his other claims on direct appeal, as ordered by the district court, he clearly defaulted those claims. Although the Court of Appeal noted the district court had not actually ruled on whether Harris' omissions were excusable, the district court judge's intent to invoke the state procedural bar was clear - Harris' claims would not be considered unless and until he showed good cause for his failure to raise them in a procedurally proper manner on direct

---

[1] Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-1207 (1963).

[2] The order to provide reasons for failure to raise those claims on direct appeal probably should have been directed to Harris' appellate attorney.

[3] Article 930.4(C) states, "If the application alleges a claim which the petitioner raised in the trial court and inexcusably failed to pursue on appeal, the court may deny relief."

appeal. Therefore, those claims are also procedurally barred unless Harris can show cause and prejudice or actual innocence to overcome the procedural bar to this court's consideration of those claims.

As to claims 1, 2, 3, and 9, Harris claims he had ineffective assistance of appellate counsel. First, Harris contends the prosecutor knowingly used false testimony from Curry, Richardson-Nezat, Lt. Via, Detective Gray, and Denny, and that his appellate counsel was ineffective for failing to raise those claims on direct appeal. To obtain relief on his claim that the state knowingly introduced false testimony, the petitioner bears the burden of establishing that the evidence was false, that the false testimony was material, and that the prosecution offered the testimony knowing it to be false. Chambers v. Johnson, 218 F.3d 360, 363-364 (5th Cir.), cert. den., 531 U.S. 1002, 121 S.Ct. 508 (2000), citing Giglio v. United States, 405 U.S. 150, 153-154, 92 S.Ct. 763 (1972). A mere conflict in the testimony of the witnesses establishes neither perjury nor mistake but merely creates an issue for the jury to resolve. Little v. Butler, 848 F.2d 73, 76 (5th Cir. 1988).

In the case at bar, Harris contends the victims (Richardson-Nezat and Curry) faked their rapes and falsely accused him, and that Dr. Walton and Det. Via testified against him due to a personal vendetta they had against him. Harris has not offered any

16

evidence that the named witnesses' testimony was false or that the prosecutor in any way acted improperly or knowingly presented false testimony. Therefore, Harris has not shown that his attorney should have raised these claims on direct appeal.

Finally, Harris contends the trial judge erred in allowing hearsay testimony from Officer Mills, Officer Fuqua, Lt. Via, and Dr. Walton. However, as discussed below, their testimony as to what Harris said to them did not constitute hearsay under F.R.E. rule 801.

Since Harris has not shown he has ineffective assistance of counsel with respect to his claims of false testimony by the victims and witnesses, Harris is procedurally barred from pursuing this claim in his habeas petition.

In Grounds 4, 11 and 12, the State contends that Harris' claims that the expert reports should have been disclosed to defense before trial, Lt. Via should not have been allowed to return to the stand as an expert witness over Harris' objection, the trial judge erred in allowing the State to introduce evidence of other crimes (theft) against Harris, and the State failed to turn over evidence favorable to Harris (complete police reports, grand jury testimony, and fingerprint evidence found on items), are also procedurally barred because he failed to make contemporaneous

objections,[4] as well as failing to raise the issues on direct appeal. In response, Harris alleges he had ineffective assistance of appellate counsel whom, he argues, was responsible for raising these issues on direct appeal, and that failure to consider these claims will result in a fundamental miscarriage of justice.

As discussed above, the fundamental miscarriage of justice exception to the rule that state procedural default bars federal habeas review is limited to cases where the petitioner can make a persuasive showing, with *new, reliable evidence that was not presented at trial*, that he is actually innocent.

Harris has not supported his allegations of actual innocence with new, reliable evidence, nor has he alleged an affirmative defense supported by new evidence. Contrast, <u>Finley</u>, 215 F.3d at 220 ("Putting the <u>Brady</u> and miscarriage of justice standards side-by-side reveals that to find a miscarriage of justice, this Court implicitly found that the evidence that had surfaced after trial was material and favorable to the defendant"). Since Harris has not supported his claim of actual innocence, he has not

---

[4] In <u>Wainwright v. Sykes</u>, 433 U.S. 72, 97 S.Ct. 2497 (1977), the Supreme Court held that federal habeas relief from state convictions will not be available on the basis of claims which are barred under state law because of failure to comply with state contemporaneous objection and similar procedural rules, unless the habeas claimant shows cause for his failure to timely object and actual prejudice. <u>Webb v. Blackburn</u>, 773 F.2d 646, 648 (5th Cir. 1985).

overcome the procedural bar to this court's consideration of these claims.

Therefore, Harris is procedurally barred from presenting the claims for habeas relief raised by Harris in numbers 1, 2, 3, 4, 9, 11, and 12.

## II.  Non-Defaulted Claims

Grounds No. 5, 8, & 10 - Ineffective Assistance of Trial Counsel

Next, Harris claims he had ineffective assistance of trial counsel (Doc. Item 1 & Ex.) because (1) his attorney did not ask for a list of potential witnesses from Harris until the day before trial began (Doc. Item 1), (2) he failed to impeach the state's witnesses with their conflicting statements (Doc. Item 1), (3) he failed to interview defense witnesses and only interviewed Harris three times (Doc. Item 1), (4) failed to object to the unconstitutionality of Article 413(B) and race discrimination in the selection of the grand jury foreperson (Doc. Item 1 Ex.), (5) failed to file a motion for change of venue on the grounds of pretrial publicity (Doc. Item 1 Ex.), (6) failed to impeach and charge key state witnesses with perjury in their testimonies under oath (Doc. Item 1 Ex.), (7) failed to subpoena and interview any of defendant's witnesses before trial (Doc. Item 1 Ex.), (8) failed to object to state employee's testimonies concerning statement Harris allegedly made, without counsel present, to law enforcement

19

officers and the state-employed treating physician (Doc. Item 1
Ex.), (9) failed to make a pretrial motion for a list of defense
witnesses, instead moving for the list after the jury was selected
(Doc. Item 1 Ex.) (10) failed to move to suppress evidence and
object to introduction of a letter and a black leather jacket (Doc.
Item 1 Ex.); (11) failed to inform Harris of the evidence the State
intended to use against him at trial (Doc. Item 1 Ex.), (12) failed
to object other crimes evidence (Doc. Item 1 Ex.), (13) failed to
object to hearsay testimony from Officer Heath Mills (Doc. Item 1
Ex.), and (14) failed to object when the court allowed the
prosecutor to question Officer Kurt Fuqua as to hearsay (Doc. Item
1 Ex.).

## 1, 3 & 7

Harris complains his attorney did not adequately investigate
potential witnesses and only interviewed Harris three times.
Counsel has a duty to make reasonable investigations or to make a
reasonable decision that makes particular investigations
unnecessary. Nelson v. Hargett, 989 F.2d 847, 850 (5th Cir. 1993),
citing Strickland v. Washington, 466 U.S. 668, 691, 104 S.Ct. 1052,
2066 (1984). However, bare allegations do not suffice. A
defendant who alleges a failure to investigate on the part of his
counsel must allege with specificity what the investigation would
have revealed and how it would have altered the outcome of the
trial. Nelson, 989 F.2d at 850, citing United States v. Green, 882

20

F.2d 999, 1003 (5th Cir. 1989). Under Strickland, even where trial counsel has failed to adequately investigate a case, a defendant must demonstrate that he has been prejudiced by his counsel's failure. See Lockhart v. McCotter, 782 F.2d 1275, 1282 (5th Cir.1986), cert. den., 479 U.S. 1030, 107 S.Ct. 873 (1987).

Complaints of uncalled witnesses are not favored because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative. Graves v. Cockrell, 351 F.3d 143, 155 (5th Cir. 2003), amended in other part, 351 F.3d 156 (5th Cir. 2003), cert. den., 124 S.Ct. 2160 (U.S. 2004), citing Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978). Also, Boyd v. Estelle, 661 F.2d 388, 390 (5th Cir. 1981). Where the only evidence of a missing witnesses' testimony is from the defendant, the Court views claims of ineffective assistance with great caution. Sayre v. Anderson, 238 F.3d 631, 636 (5th Cir. 2001), citing Lockhart v. McCotter, 782 F.2d 1275, 1282 (5th Cir.1986), cert. den., 479 U.S. 1030, 107 S.Ct. 873 (1987). Unless a petitioner provides the court with affidavits (or similar matter) from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice. Sayre, 238 F.3d at 636.

Since Harris has not provided any affidavits or other evidence to show how the potential witnesses would have assisted his

21

defense, and also has not shown how additional interviews with Harris would have assisted his defense and changed the outcome of the trial, Harris has not carried his burden of proving his trial counsel was ineffective in these respects.

2 & 6

Next, Harris contends his attorney rendered ineffective assistance at trial when he failed to "impeach and charge" at least nine state witnesses who allegedly committed perjury under oath. Harris has not named those witnesses, has not pointed specifically to the testimony he alleges was perjured, has not produced proof of perjury, and has not shown how he was prejudiced thereby. Therefore, Harris has not carried his burden of proving his counsel was ineffective in this regard.

4

Harris also contends his attorney failed to object to the unconstitutionality of Article 413(B) and race discrimination in the selection of the grand jury foreperson (Doc. Item 1 Ex.). As discussed above, this ground for relief is meritless.

5

Next, Harris contends his attorney was ineffective for failing to file a motion for change of venue on the grounds of pretrial publicity.

The habeas petitioner must show that the trial atmosphere was

22

"utterly corrupted by press coverage." <u>Andrews v. Collins</u>, 21 F.3d 612, 632 (5th Cir. 1994), cert. den., 513 U.S. 1114, 115 S.Ct. 908 (1995); <u>Black v. Collins</u>, 962 F.2d 394, 409 (5th Cir.), cert. den., 504 U.S. 992, 112 S.Ct. 2983 (1992).

It is not required that the jurors be totally ignorant of the facts and issues involved in a case. The mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is insufficient to rebut the presumption that a prospective juror is impartial if the juror can lay aside his or her impression and render a verdict based on the evidence presented in court. <u>De La Rosa v. State of Texas</u>, 743 F.2d 299, 1379 (5th Cir. 1984), cert. den., 470 U.S. 1065, 105 S.Ct. 1781, 84 L.Ed.2d 840 (1985), quoting <u>Irvin v. Dowd</u>, 366 U.S. 717, 722-23, 81 S.Ct. 1639, 1642 (1961). <u>Willie v. Maggio</u>, 737 F.2d 1372, 1379 (5th Cir.), cert. den., 469 U.S. 1002, 105 S.Ct. 415 (1984). The issue is whether exposure to media publicity will preclude the individual from returning a verdict based solely on the person's application of the law as stated to the evidence presented. The trial court must decide this question after observing the demeanor and response of the prospective jurors and evaluating any possible prejudice. <u>U.S. v. Flores</u>, 63 F.3d 1342, 1357 (5th Cir. 1995). The trial court is the first and best judge of community sentiment and the indifference of the prospective juror. <u>Leichman v. Secretary, Louisiana Dept. of Corrections</u>, 939 F.2d 315, 316 (5th Cir. 1991).

The trial court's factual findings are entitled to a presumption of correctness. 28 U.S.C. §2254(d); Sumner v. Mata, 449 U.S. 539, 545-47, 101 S.Ct. 764, 768-69 (1981). The Constitution does not require that jurors be completely unaware of the facts and issues to be tried.

With respect to media publicity, the news of a defendant's prior criminal record disclosed to a jury is considered "inherently prejudicial". U.S. v. Gaffney, 676 F.Supp. 1544, 1551-52 (M.D. Fla. 1987), citing Murphy v. Florida, 421 U.S. 794, 798, 95 S.Ct. 2031, 2035 (1975). Also, U.S. v. Bass, 10 F.3d 256, 260 (5th Cir. 1993); U.S. v. Aragon, 962 F.2d 439, 444 (5th Cir. 1992) ("Thus, at a minimum, references to [the defendant's] prior convictions constituted inherently prejudicial evidence....It is innately prejudicial."); U.S. v. Williams, 568 F.2d 464 (5th Cir. 1978).

At the beginning of voir dire, on the first day, the prospective jurors denied knowing anything about Harris' case (Tr. p. 26). However, there was an evening television newscast concerning Harris and his trial on first day of jury selection (Tr. p. 103). In that newscast, the district attorney was quoted as referring to Harris as a "serial rapist" and a "territorial rapist" with a prior rape conviction (Tr. pp. 103-104). At the start of the second day of jury selection, Harris's trial counsel stated he was concerned about whether the selected jurors and prospective jurors had heard the newscast (Tr. p. 105). The District

Attorney/prosecutor stated that, when the news crew called him and read some material to him, he told them they were correct but refused to otherwise comment (Tr. pp. 105-106). The DA also stated the news crew had probably quoted him from an older newspaper article, where he used the term "territorial rapist" (Tr. p. 108).

At the beginning of voir dire, the prospective jurors denied knowing anything about Harris' case (Tr. p. 26). However, Steve Nugent admitted he heard his mother-in-law begin to discuss a rape victim and immediately left the room before he heard any names or other information (Tr. pp. 112-113); Nugent was peremptorily challenged (Tr. p. 684).

On the second day, Mr. Eunson, Mr. Abell, and Mr. Stewart, all stated they saw Harris's picture on TV and immediately stopped watching the newscast, and thus did not see or hear anything about Harris or the case (Tr. pp. 213-222).

On the third day of voir dire, one prospective juror, Ms. McGowan, stated she heard the beginning of the newscast about Harris' trial and quickly left the room (Tr. pp. 338-340). Ms. McGowan stated she did not hear anything of import about the case and her ability to serve as a juror was unaffected (Tr. p. 340); McGown was peremptorily challenged (Tr. p. 685). Another prospective juror, Mr. McKinney, was twice involved in a discussion about the case at the television station where he worked in news production (Tr. pp. 265-266, 341-345); Mr. McKinney was excused for

cause (Tr. p. 346). A third prospective juror, Mr. Kirkham, had read about the case in the newspaper and formed an opinion about it; he was excused for cause (Tr. pp. 346-350).

On another panel of prospective jurors, Ms. Birdsong had read a little about the case in an old newspaper article a long time ago but did not recall what she had read other than Harris' name and the charges (Tr. pp. 417-419), and Ms. Patrick saw an article that appeared to be about the case in that morning's newspaper but did not read it (Tr. pp. 420-422). Patrick and Birdsong were obviously not affected by the news articles and served as alternate jurors (Tr. p. 429). Mr. Loftin heard family members start to discuss the case, using the term "serial rape" (Tr. pp. 422-424). Although the trial judge denied Harris' challenge for cause as to Loftin because Loftin stated he had not formed any opinion about the case, Loftin did not serve as a juror (Tr. pp. 425-427).

Of the empaneled jurors, including the two alternates, Eunson, Abell, Stewart, Birdsong, and Patrick had briefly heard or seen something about Harris' case, but had not seen anything inherently prejudicial to Harris and had not formed an opinion about his guilt or innocence. Therefore, Harris has not shown prejudice arising from the media coverage of his trial.

Since the record does not indicate that Harris' trial atmosphere was "utterly corrupted by press coverage," Harris has not carried his burden of proving his attorney was ineffective for

26

failing to file a motion for change of venue due to pretrial publicity. This ground for relief if meritless.

8

Next, Harris contends his trial counsel was ineffective for failing to object to the state employees' testimonies concerning inculpatory statements Harris allegedly made, without counsel present, to law enforcement officers and the state-employed treating physician. Again, Harris does not allege specifically which state employees testified as to statements Harris allegedly made. Harris contends his counsel should have objected on the ground that such testimony was inadmissible hearsay. However, an inculpatory statement by a criminal defendant is not hearsay. See La.C.E. rule 801(D). Since Harris has not alleged or shown how his inculpatory statements were otherwise inadmissible, Harris' claim that his trial counsel was ineffective for failing to object to the admission of Harris' inculpatory statements is meritless.

9

Next, Harris contends his attorney was ineffective for failing to file a pretrial motion for a list of state witnesses, instead moving for the list after the jury was selected. Nothing in the record indicates Harris' attorney moved for a list of the state's witness after the jury was selected. Harris' attorney made all appropriate pretrial discovery motions, including a motion for

27

disclosure of the witness list which was filed several months before trial (Ex. Vol. 2 of 3, Tr. p. 497). That motion was heard and the trial judge ordered production of a witness list (Tr. p. 787-789). Therefore, Harris has not carried his burden of proving he had ineffective assistance of counsel with regard to pretrial discovery. This ground for relief is meritless.

10

Harris contends his attorney was ineffective for failing to move to suppress evidence and object to the introduction of a letter and a black leather jacket (Doc. Item 1 Ex.). The letter was one Harris wrote to his girlfriend, Paula Weems, asking her to provide him with an alibi for the time of Richardson-Nezat's rape. The jacket was one Harris took from Richardson-Nezat's apartment. Although Harris correctly points out that his attorney did not file a motion to suppress this evidence, he has failed to state a basis on which such a motion could have been successfully made. Counsel is not required to engage in the filing of futile motions. Murray v. Maggio, 736 F.2d 279, 283 (5th Cir. 1984), citing William v. Beto, 354 F.2d 698, 703 (5th Cir.1965). Therefore, Harris has not carried his burden of proving his trial counsel erred in failing to do so, and this ground for relief is meritless.

11

Harris contends his attorney failed to provide him with the

evidence the State intended to use against him at trial, specifically, the complete police reports, lab results, and sworn witness statements (Doc. Item 1 Ex.). Harris claims that, had he been provided with these, could have assisted his attorney with preparing a "much stronger and better defense." Again, Harris has not shown exactly how this evidence, which his attorney had been provided with by the state, would have improved his defense if he had viewed it, also. Therefore, Harris has not carried his burden of proving his attorney committed an error which prejudiced Harris.

12

Next, Harris contends his attorney was ineffective in failing to object to "other crimes evidence," being Lt. Via's testimony as to similarities between the charged offenses (Doc. Item 1 Ex.). Since a charged offense does not constitute "other crimes" evidence, F.C.E. rule 404(B), and evidence is similar crimes is admissible in sexual assault cases, F.C.E. rule 413, Harris has not shown that his attorney committed an error. This ground for relief is meritless.

13 & 14

Finally, Harris contends his attorney provided ineffective assistance when he failed to object to hearsay testimony from Officer Heath Mills (Doc. Item 1 Ex.), and failed to object when the court allowed the prosecutor to question Officer Kurt Fuqua as

to hearsay. The "hearsay" testimony Harris is referring to is actually statements made by Harris to Officer Mills and Officer Fuqua. Harris told Officer Mills (Tr. p. 671), "I was nervous and scared. I didn't commit a rape. I didn't rape her. I heard the police coming and I got off of her. I didn't mean to say that." Harris told Officer Fuqua that "one thing led to another" and he and Curry had sex, that he would take the rap for the marijuana charge, that Curry had needed a fix "real bad," that he knew Curry from work, and they had discussed Curry paging him and the location of the marijuana (Tr. p. 671).

Since a defendant's own statements do not constitute hearsay, F.C.E. rule 801(d)(2), this ground for relief is meritless. See U.S. v. Flores, 63 F.3d 1342, 1358 (5th Cir. 1995), cert. den., 519 U.S. 825, 117 S.Ct. 87 (1996), citing U.S. v. Clemons, 676 F.2d 122, 123 (5th Cir. 1982).

## Ground 13 - Severance

Next, Harris argues the trial judge erred in denying Harris' motion to sever his trials on the two aggravated rape charges (Tr. Vol. 2 of 3, pp. 487-488).

Pursuant to La.C.Cr.P. art. 493, two or more offenses may be charged in the same bill of information in a separate count for each offense if the offenses charged are of the same or similar character, provided that the offenses joined must be triable by the

30

same mode of trial. See State v. Alexander, 2003-2072 (La.App. 4 Cir. 5/19/04), 875 So.2d 853, 859.

When a petitioner alleges a violation of state procedure, the court must determine whether there has been a constitutional infraction of defendant's due process rights which would render the trial as a whole fundamentally unfair. Nelson v. Estelle, 642 F.2d 903, 906 (5th Cir. 1981); Tribbitt v. Wainwright, 540 F .2d 840 (5th Cir. 1976), cert. denied, 430 U.S. 910, 97 S.Ct. 11845 (1977). The improper joinder of offenses is a constitutional violation only if it actually renders petitioner's state trial fundamentally unfair and hence, violative of due process. Tribbitt, 540 F.2d at 841. It is a petitioner's burden to demonstrate that the joinder of offenses constituted specific prejudice which actually resulted in an unfair trial. United States v. Holloway, 1 F.3d 307 (5th Cir. 1993); Tribbitt, 540 F.2d at 841 (joinder must "actually" render trial fundamentally unfair before habeas relief is appropriate).

In the instant case, Harris has not demonstrated there was actual prejudice. The claims against Petitioner were distinct, as the alleged crimes were executed at different times and different locations. Harris has not set forth any grounds under Louisiana law for severing the two offenses charged in his indictment. Although Harris argues the State used one case to bolster the other by trying them together, there is no indication that the fact-

finding process was impermissibly tainted at petitioner's state trial by the consolidation of these charges. Therefore, Harris cannot show the joinder of the two factually similar offenses, both charges as aggravated rape, rendered his trial fundamentally unfair.

This ground for habeas relief is also meritless.

Ground No. 14 - Physician-Patient Privilege

Harris contends the trial judge erred in allowing the State to introduce testimony protected by the physician-patient privilege.[5] Harris argues that Dr. Walton, a physician employed by the state to work at the jail where Harris was incarcerated prior to trial, should not have been allowed to testify as to a conversation she had with Harris (See Tr. pp. 673-675). Harris contends Dr. Walton twisted their conversation to make it sound incriminating because Dr. Walton believed Harris had been selling her daughter marijuana and had asked Harris about that. Since the portion of the conversation Harris is concerned about, whether he should shave his pubic hair to get rid of lice, was immaterial since the State already had a pubic hair sample from Harris (Tr. pp. 674-678), Harris has not shown prejudice from Dr. Walton's testimony. This ground for relief is meritless.

_____

[5] The physician-patient privilege is established by state statute or common law and is not a constitutional right. Maness v. Meyers, 419 U.S. 449, 461, 95 S.Ct. 584, 592 (1975).

Ground No. 15 - Challenge for Cause

In this ground Harris contends the trial judge erred in failing to grant Harris' challenge for cause of prospective juror Steven Nugent.

One touchstone of a fair trial is an impartial trier of fact, "a jury capable and willing to decide the case solely on the evidence before it." Voir dire examination serves to protect that right by exposing possible biases, both known and unknown, on the part of potential jurors. Demonstrated bias in the responses to questions on voir dire may result in a juror's being excused for cause; hints of bias not sufficient to warrant a challenge for cause may assist parties in exercising their peremptory challenges. McDonough Power Equipment, Inc. v. Greenwood, 464 U.S. 548, 554, 104 S.Ct. 845, 849 (1984).

Peremptory challenges are not constitutional rights. The loss of a peremptory challenge does not constitute a violation of the constitutional right to an impartial jury. So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated. Herman v. Johnson, 98 F.3d 171, 174 (5th Cir. 1996), cert. den., 520 U.S. 1123, 117 S.Ct. 1262 (1997).

The trial judge denied Harris' challenge for cause against

33

Nugent (Tr. pp. 208-212).[6] However, Nugent was excused and did not serve as a juror at Harris' trial (Tr. pp. 235-236). Although it is not clear which side excused Nugent, even assuming Harris used a peremptory challenge against him, Harris was not denied due process since there is no constitutional right to peremptory challenges. Therefore, this ground for relief is meritless.

Ground No. 16 - Subpoenaed Witness

Harris argues the trial judge erred in failing to hold a recess to allow Harris to locate a subpoenaed witness, Samantha Works, who failed to appear at trial. Harris issued a subpoena for

---

[6] Nugent admitted he heard his mother-in-law begin to discuss a rape victim the evening of the first day of jury selection and immediately left the room (Tr. p. 206), stated he had known Detective Mike Gray (a witness for the State) of the Monroe Police Department ("MPD") for three or four years and played golf or cards with him (and others in law enforcement) once a week (Tr. pp. 152, 159), was friends with other MPD officers (Tr. pp. 153-154), and his brother-in-law used to work with Gray in the MPD (Tr. p. 152). Nugent stated that listening to Gray testify as a witness, his friendship with other officers, and the fact of his brother-in-law's employment in law enforcement would not affect his decision in the case (Tr. pp. 152-153), nor would what he heard his mother-in-law say before he left the room (Tr. p. 207). Harris' attorney challenged Nugent for cause on the basis of Nugent's close social relationship with Detective Gray, who was a key investigative officer and a potential witness in the case (Tr. p. 208). The judge stated that, since Nugent had stated his relationship with Det. Gray and other law enforcement officers would not affect his decision as a juror, he would not grant the challenge for cause on that basis (Tr. p. 210). However, the judge further stated he had noted Nugent had stated he may vote guilty even if proof is not beyond a reasonable doubt (Tr. p. 210), questioned Nugent regarding that statement, concluded Nugent could serve as a juror, and denied the challenge for cause on that basis, as well (Tr. pp. 211-212).

Works, but it was not served prior to trial (Vol. 3 of 3, p. 849).

A motion for continuance is addressed to the sound discretion of the trial court and is not to be disturbed on a petition for habeas corpus unless there is a showing that there has been an abuse of discretion and that the denial was so fundamentally unfair that it violates constitutional principles of due process. Skillern v. Estelle, 720 F.2d 839, 850 (5th Cir. 1983), cert. den., 469 U.S. 873, 105 S.Ct. 224 (1984); Hicks v. Wainwright, 633 F.2d 1146, 1147-1148 (5th Cir. 1981). When a denial of a continuance forms a basis of a petition for a writ of habeas corpus, not only must there have been an abuse of discretion but it must have been so arbitrary and fundamentally unfair that it violates constitutional principles of due process. Hicks, 633 F.2d at 1148.

The factors to be considered in determining whether a denial of a motion for a continuance made for the purpose of procuring defense witnesses was an abuse of a trial court's discretion are: (1) the diligence of the defense in interviewing witnesses and procuring their presence, (2) the probability of procuring their testimony within a reasonable time, (3) the specificity with which the defense is able to describe their expected knowledge or testimony, (4) the degree to which such testimony is expected to be favorable to the accused, and (5) the unique or cumulative nature of the testimony. Hicks, 633 F.2d at 1149, quoting United States v. Uptain, 531 F.2d 1281, 1287 (5th Cir. 1976). There are no

35

mechanical tests for deciding when a denial of a continuance is so
arbitrary as to violate due process. The answer must be found in
the circumstances present in every case, particularly in the
reasons presented to the trial judge at the time the request is
denied. Kirkpatrick v. Blackburn, 597 F.Supp. 1562, 1571 (5th Cir.
1984), aff'd in part, rev'd in other part, 777 F.2d 272, 280 (5th
Cir. 1985), cert. den., 476 U.S. 1178, 106 S.Ct. 2907 (1986).

In the case at bar, Harris' attorney admitted that, although
a subpoena for Works was issued prior to trial, that subpoena had
not been served by the time the State rested it's case and he had
never spoken with Works.    The trial judge refused to continue
Harris' jury trial while Harris tried to locate and serve Works,
instead allowing Harris to make a proffer as to what he believed
Works' testimony would be.  Harris's attorney stated that, based on
what Harris had told him, Works was expected to testify that she
had been present during a drug transaction between Harris and Lisa
Curry (Tr. Vol. 3 of 3, p. 852).  In response to Harris' proffer,
the State's prosecutor stated that he had spoken to Works on the
telephone, and offered as a proffer that Works would testify that
she lived out of town, she knew Lisa Curry but had never seen
Harris, she had called Curry while the police and Harris were at
Curry's home immediately after Curry's rape, she visited Curry in
the hospital afterward, and she had received threatening phone
calls, from people claiming to be Harris' family members, telling

36

her to testify that she had been present at a drug deal between Curry and Harris (Tr. Vo. 3 of 3, p. 853-854).

Harris' defense to Curry's rape was that he had consensual sex with Curry during the drug deal at which Works was allegedly present. Harris contends Curry was high on crystal meth at the time, so her testimony as that she was raped was not credible. It does not appear, according to Harris' proffer, that Works' testimony was critical to or particularly favorable to Harris' defense to his charge in Curry's rape, since he does not contend Works witnessed him having sex with Curry. Moreover, the fact that Curry was on the telephone with her neighbor at the time Harris broke into her house, and told her neighbor to call the police, contradicts Harris' defense and supports Curry's claim of rape. It also does not appear that Works could have been located and served within a reasonable amount of time, since Harris did not know where Works could be located and the State's proffer showed she lived out of town (Tr. Vol. 3 of 3, p. 853). Therefore, Harris has not shown that the trial judge committed an abuse of discretion which rendered Harris' trial fundamentally unfair when he denied Harris a continuance to obtain Works' appearance.

This ground for relief is also meritless.

Ground 17 - Sufficiency of the Evidence - Richardson-Nezat

Harris contends there is insufficient evidence to support his

37

conviction for aggravated rape of Amy Richardson-Nezat, since the evidence was circumstantial and inconsistent.

A reviewing court confronted with a claim of insufficient evidence must, after viewing all the evidence in the light most favorable to the conviction (prosecution), determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Cupit v. Whitley, 28 F.3d 532, 542 (5th Cir. 1994), cert. den., 513 U.S. 1163, 115 S.Ct. 1128 (1995), citing Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781 (1979). Habeas relief on a claim of insufficient evidence is appropriate only if it is found that, upon the record evidence adduced at trial, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. West v. Johnson, 92 F.3d 1385 (5th Cir. 1996), cert. den., 520 U.S. 1242, 117 S.Ct. 1847 (1997), citing Jackson, 443 U.S. at 322-26, 99 S.Ct. at 2791-92.

When a conviction is based on circumstantial evidence, such evidence must exclude every reasonable hypothesis of innocence. La.Rev.Stat. Ann. S 15:438. State v. Johnson, 97-0317 (La. App. 4th Cir. 8/19/98), *5, 718 So.2d 553, 556, citing State v. Camp, 446 So.2d 1207 (La. 1984). This is not a stricter standard of review, but it is an evidentiary guide for the jury when it considers circumstantial evidence. Johnson, 97-317, *5, 718 So.2d at 556, citing State v. Porretto, 468 So.2d 1142 (La. 1985). When circumstantial evidence is sufficient to convict beyond a

38

reasonable doubt and a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails; and, unless another hypothesis creates reasonable doubt, the defendant is guilty. Johnson, 97-317, *5, 718 So.2d at 556, citing State v. Captville, 448 So.2d 676 (La. 1984).

Aggravated rape, as defined in La.R.S. 14:42(A)(3), is a rape committed when the victim is prevented from resisting the act because the offender is armed with a dangerous weapon. See State v. Savario, 97-2614 (La. App. 1st Cir. 11/6/98), 721 So.2d 1084, writ denied, 1998-3032 (La. 4/1/99), 741 So.2d 1280; State v. Gallien, 613 So.2d 1145 (La. App. 5th Cir. 1993).

In the case at bar, Richardson-Nezat testified that a black male broke into her apartment, blind-folded her, and forced her to have sex with him at gunpoint (Tr. Vol. 2 of 3, pp. 483-494). Richardson-Nezat's jacket disappeared from her apartment the night the was raped. Harris was subsequently caught by the police at Curry's apartment immediately after raping Curry at gunpoint; Harris' gun was found in Curry's home. Later, Harris' home was searched and Richardson-Nezat's jacket was found in his closet (Tr. Vol. 2 of 3, p. 491-493, 574-575).

Viewing the evidence in the light most favorable to the conviction, there is sufficient evidence to support Harris' conviction for aggravated rape of Richardson-Nezat. This ground for relief is meritless.

39

## Ground 18 - Sufficiency of the Evidence - Curry

Finally, Harris contends there is insufficient evidence to support his conviction for aggravated rape of Lisa Curry. However, as stated above, Harris was caught by the police in Curry's apartment immediately after he raped her; Harris' gun was also found in Curry's apartment. Curry testified that she was talking on the telephone with a neighbor, asking her neighbor whether he could see who was jiggling her back-door knob, when Harris broke into her apartment and raped her at gunpoint, and the police arrived immediately afterward, in time to catch Harris in her apartment. Viewing this evidence in the light most favorable to the conviction, there is sufficient evidence to support Harris' conviction for aggravated rape of Curry. This ground for relief is also meritless.

### Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Harris' petition for writ of habeas corpus be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a

copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this day of December, 2005.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE

41